# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| CYNTHIA L. ROPER, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CV422-57 |
| | ) |
| BETHY WELLS, | ) |
| COASTAL HARBOR | ) |
| TREATMENT | ) |
| | ) |
|    Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, appearing *pro se* and *in forma pauperis*, filed this lawsuit alleging various unlawful employment actions against her former employer and its Director of Human Resources. *See generally* doc. 1. Currently pending are the Defendant Wells'[1] Motion to Dismiss, or, in the Alternative, to Compel Arbitration, doc. 15, and Defendant UHS of Savannah, LLC's Motion to Compel Arbitration and to Dismiss, doc. 16.

---

[1] The docket reflects only a single Defendant, Bethy Wells, but the Complaint indicates that Plaintiff intended to sue both Wells and "Coastal Harbor Treatment." Moreover, UHS of Savannah, LLC d/b/a Coastal Harbor Health System has waived service of the Complaint and asserted a right to arbitration in the present matter. *See* doc. 1 at 1 and doc. 13 & 16. The Clerk is **DIRECTED** to update the docket to include UHS of Savannah, LLC d/b/a Coastal Harbor Health System as a second Defendant.

1

## I.   Background and Procedural History

Plaintiff was formerly employed by Coastal Harbor Treatment Center. Doc. 1 at 7. In May of 2020, she had an accident which caused substantial injury requiring extensive physical therapy and impacted her ability to work. She took medical leave until April 2021. *Id*. When she was released to work again, she sought another position with Coastal Harbor Treatment Center. The new position suited her ongoing medical concerns because she would not be required to lift anything over twenty pounds, unlike her prior position. Although she had the credentials for the new job and was at first offered it, she was ultimately terminated. She alleges that the termination was in retaliation for reporting harassment and for taking medical leave. *Id*. She asserts discriminatory conduct such as termination, failure to promote, failure to accommodate, and retaliation on the basis of race, color, disability or perceived disability. She received her Right to Sue Letter from the Equal Employment Opportunity Commission (EEOC) on January 1, 2021 and brought the present suit on March 3, 2022. *Id*. at 5.

Defendants filed their respective Motions on September 19, 2022. Docs. 15 & 16.[2] Defendant Wells makes the following arguments against Plaintiff's Complaint: (1) Plaintiff's Complaint is time barred; (2) it fails to satisfy pleading standards articulated by Fed. R. Civ. P. Rule 8; (3) Defendant Wells is not personally liable as a matter of law; and (4) Plaintiff agreed to arbitrate employment disputes and thus the Court lacks subject matter jurisdiction. Doc. 15 at 1-2. Defendant UHS argues that Plaintiff's claims are subject to mandatory arbitration, and therefore requests the matter be dismissed for lack of subject matter jurisdiction. Doc. 16. Plaintiff did not respond to the Motions. However, this matter is ripe for review as the time for response has expired.

Although whether Plaintiff has met her Rule 8 burden is questionable, the Court is not prepared to recommend dismissal of Plaintiff's claims in this case's current posture based on her pleading

---

[2] "The Court may 'consider evidence outside of the pleadings for purposes of a motion to compel arbitration.'" *Leslie v. Barclays Bank Delaware*, 2017 WL 8220505, at *2 n.2 (N.D. Ga. Oct. 13, 2017) (quoting *Chambers v. Groome Transp. of Alabama*, 41 F. Supp. 3d 1327, 1334 (M.D. Ala. 2014)); *see also Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 n.6 (11th Cir. 2001) ("A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination."); *Hulsey v. Gunn*, 905 F. Supp. 1067, 1070 (N.D. Ga. 1995) ("'Factual attacks' . . . challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" (citation omitted)).

deficiencies alone, as argued by Defendant Wells. *See Cornelius v. Bank of Am., NA,* 585 F. App'x 996, 1000 (11th Cir. 2014) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district judge dismisses the action with prejudice."); *but see Cockrell v. Sparks,* 510 F.3d 1307, 1310 (11th Cir. 2007) (a district judge need not allow an amendment where amendment would be futile.)  Furthermore, "'in the absence of an agreement to the contrary, issues of . . . procedural arbitrability, *i.e.,* whether prerequisites such as *time limits,* notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.'" *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84–85 (2002) (quoting the Revised Uniform Arbitration Act of 2000 § 6, comment 2, 7 U.L.A., at 13 (emphasis added)).  Therefore, the Court may not reach Defendant Wells' arguments regarding the timeliness of Plaintiff's Complaint.  Indeed, the contract itself mandates that the "arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration." Doc. 15-1 at 6.  As well, Defendant Wells' arguments as to her personal liability are not properly before the Court. *Henry Schein, Inc. v. Archer*

& *White Sales, Inc.*, ___ U.S. ___, 139 S. Ct. 524, 530 (2019) ("When the parties' contract assigns a matter to arbitration, a court may not resolve the merits of the dispute even if the court thinks that a party's claim on the merits is frivolous."). Nevertheless, the case must be dismissed pursuant to the Federal Arbitration Act (FAA).

## II. Legal Standard

The FAA was enacted as "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see* 9 U.S.C. § 2. The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). Moreover, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Arbitration agreements in employment contracts are enforceable and are covered by the FAA. *See Circuit City Stores, Inc. v. Adams*, 532

U.S. 105, 118-19 (2001) (holding that FAA provisions apply to arbitration agreements contained in employment contracts). Additionally, statutory claims relevant to allegations of discrimination may be the subject of an arbitration agreement, enforceable pursuant to the FAA. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-30 (1991); *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir. 1998); *Wallace v. Rick Case Auto, Inc.*, 979 F. Supp. 2d 1343, 1347 (N.D. Ga. 2013) ("The fact that plaintiffs here advance statutory discrimination claims does not change th[e] analysis, as 'compulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes.'") (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005)).

"In order to determine whether arbitration should be compelled, the Court must assess whether: '(1) there is a valid written agreement to arbitrate; (2) the issue [sought to be arbitrated] is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims.'" *Jones-Young v. S. Crescent Behav. Health Sys.*,

6

2022 WL 3327294, at *6 (N.D. Ga. June 6, 2022) (citing *Lomax v. Woodmen of the World Life Ins. Society*, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002)); *see also* 9 U.S.C. §§ 2–4; *Retina Consultants P.C. Defined Benefit Pension Plan v. Benjamin*, 2020 WL 1491756, at *6 (S.D. Ga. Mar. 19, 2020) (to compel arbitration, movant must show "(1) Plaintiff entered into an enforceable, written arbitration agreement under state law and (2) the claims before the Court fall within the scope of that agreement.")

A summary judgment-like standard is appropriate to determine whether the first element is satisfied; a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if "there is no genuine dispute as to any material fact" concerning the formation of such an agreement. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). Moreover, state law generally governs whether an enforceable contract or agreement to arbitrate exists. *See Perry v. Thomas,* 482 U.S. 483, 492 n. 9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." (emphasis omitted)). The "federal policy favoring arbitration, however, is taken into

consideration even in applying ordinary state law." *Cooper v. MRM Inv. Co.,* 367 F.3d 493, 498 (6th Cir.2004) (quotation marks and citation omitted).

## III. Discussion

"The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.' Absent such an agreement, 'a court cannot compel the parties to settle their dispute in an arbitral forum.'" *Bazemore,* 827 F.3d at 1329 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)). Under Georgia law, which is applicable here, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1.

Defendant Wells produced Coastal Harbor Health System's Alternative Resolution of Conflicts (ARC) Agreement, in which Plaintiff agreed to arbitrate any "past, present, or future dispute arising out of or related to [her] application for employment, employment and/or termination of employment with CHHS or one of its affiliates,

8

subsidiaries, or parent companies." Doc. 15-1 at 4.[3] Plaintiff's signature was placed on the bottom of the agreement, which she also dated for October 23, 2019. *Id.* at 7. Thus, it appears there is no dispute as to whether a written agreement to arbitrate exists, or whether there is subject matter upon which the contract can operate. As to consideration, Georgia law provides that mutual promises and obligations to arbitrate are sufficient consideration to support a contract. *See Atlanta Six Flags P'ship v. Hughes,* 381 S.E.2d 605, 607 (Ga. Ct. App. 1989) ("[T]he mutual promises and obligations of the parties constituted sufficient consideration for the contract."). Here, the plaintiff received reciprocal promises from Defendant UHS to arbitrate and be bound by arbitration in covered claims and thus consideration is present. *Caley*, 428 F.3d at 1367.

Plaintiff indicated her acceptance of the terms of the agreement by signing even though she was given an opportunity to opt out of the agreement, and even though she was warned that continued employment

---

[3] Defendant UHS noted in its unrefuted Motion that Coastal Harbor is an umbrella term for the two UHS facilities in Savannah, Coastal Behavioral Health and Coastal Harbor Treatment Center. Accordingly, Defendant UHS and Plaintiff were privy to the Costal Harbor Health System's ARC Agreement by virtue of Plaintiff's employment with Coastal Harbor Treatment Center. *See* doc. 15-1 at 1.

9

would constitute "mutual acceptance of the terms" of the agreement. Doc. 15-1 at 7. Georgia law is clear that "[p]arties to a contract are presumed to have read their provisions and to have understood the contents. One who can read, must read, for he is bound by his contracts." *O'Brien Family Tr. v. Glen Falls Ins. Co.*, 461 S.E.2d 311, 314 (Ga. Ct. App. 1995) (quotation marks and citation omitted)). Plaintiff has not come forward with argument challenging her comprehension of the terms, and thus, the Court must conclude she is bound by a valid and enforceable arbitration contract because there does not appear to be any question of material fact as to its formation. *Bazemore*, 827 F.3d at 1333.

The second element is established because the claims brought by Plaintiff in her Complaint fall within the scope of the ARC Agreement. As noted, Plaintiff asserts claims against Defendant for retaliation and discrimination which appear to implicate Title VII, the ADA, and possibly for retaliation and interference of her rights under the Family Medical Leave Act. Doc. 1 at 4. The adverse actions taken against Plaintiff culminated in her termination. *Id*. at 7-8. Meanwhile, the ARC Agreement specifically applies "to disputes regarding the employment relationship . . . discrimination, termination, or harassment and claims

10

arising under . . . .the Civil Rights Act of 1964,[4] . . . Americans With Disabilities Act, Family Medical Leave Act," and others. Doc. 15-1 at 4. Clearly, the issues sought to be arbitrated fall within the scope of the agreement.

The third element requires the Court to determine whether Plaintiff "has failed or refused to arbitrate the claims." *Lomax*, 228 F. Supp. 2d at 1362 (citation and internal quotation marks omitted). The ARC Agreement provides instructions about how the arbitration proceedings are conducted, payment for the arbitration, and the arbitration hearing and award. Doc. 15-1 at 6. There is no evidence that Plaintiff complied with the requirements set forth in the ARC Agreement. Instead, Plaintiff filed the present action in this Court. Finally, "[h]aving made the bargain to arbitrate, [Plaintiff] should be held to it unless Congress itself has evinced an intention to preclude a

---

[4] Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, and national origin. 42 U.S.C. § 2000e. The Civil Rights Act of 1991 (Pub. L. 102-166) (CRA) and the Lily Ledbetter Fair Pay Act of 2009 (Pub. L. 111-2) amended several sections of Title VII. In addition, section 102 of the CRA (42 U.S.C. 1981), was then amended to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII, the Americans with Disabilities Act of 1990, and section 501 of the Rehabilitation Act of 1973. Accordingly, although the ARC Agreement does not explicitly reference Title VII, and Plaintiff's claims possibly implicate CRA amendments, the broader articulation requiring Civil Rights Act complaints be arbitrated necessarily includes Plaintiff's allegations.

waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Plaintiff has not come forward with any authority precluding arbitration of her claims in this action, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes. *Caley*, 428 F.3d 1367 (citing *Weeks*, 291 F.3d at 1313–14). Thus, there appear to be no " 'legal constraints external to the parties' agreement foreclosed arbitration.'" *Klay*, 389 F.3d at 1200 (quoting *Mitsubishi Motors Corp., Inc.*, 473 U.S. at 628).

Defendants have established the existence of a valid arbitration agreement, which Plaintiff executed with her own signature. This arbitration agreement is expansive and plainly includes the claims included in Plaintiff's Complaint, all of which relate to Plaintiff's employment with Defendant, and specifically include statutory claims that the ARC Agreement encompasses. "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Caley v. Glufstream Aerospace Corp.*, 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004) (quoting *Alford v. Dean*

*Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original; internal quotation marks omitted), *aff'd,* 428 F.3d 1359 (11th Cir. 2005).  In light of this, Roper's Complaint should be dismissed.

For the reasons above, it is **RECOMMENDED** that Defendant Wells' Motion to Dismiss or, in the Alternative, to Compel Arbitration, doc 15, be **GRANTED, IN PART**,[5] and that Defendant UHS's Motion to Compel Arbitration and to Dismiss, doc. 16, be **GRANTED.**  The Court further **RECOMMENDS**  that the parties be **ORDERED** to submit all of Plaintiff's claims to arbitration and that this action be **DISMISSED**. *Kozma v. Hunter Scott Financial, L.L.C.*, 2010 WL 724498, at *2 (S.D. Fla. Feb. 25, 2010) (collecting cases) (pointing out that the Eleventh Circuit has "frequently affirmed where the district court compelled arbitration and dismissed the underlying case").

This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and

---

[5] To the extent Defendant Wells' Motion relies on 12(b)(6) and argues for dismissal based upon any arbitral matters, including the merits and timeliness of Plaintiff's claims, if the District Judge adopts this recommendation, her Motion should be DISMISSED, in part, as moot.  Doc. 15.

serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED and RECOMMENDED**, this 27th day of October, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

14